IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| REBECCA LEIGH DEHART,<br><br>Plaintiff,<br><br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC.,<br><br>Defendant. | ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS<br><br><br><br>Case No. 1:05-CV-00118 PGC |

Defendant Stevens-Henager College, Inc., filed a motion to compel arbitration and stay proceedings pending that arbitration with the court (#2). The court DENIES Stevens-Henager College's motion.

DISCUSSION

Plaintiff Rebecca Leigh DeHart filed a complaint with the court alleging that the College violated her civil rights under the Equal Pay Act[1] and Title VII of the Civil Rights Act of 1965.[2] She timely filed a complaint with the Equal Employment Opportunity Commission (EEOC), and

---

[1] 29 U.S.C. § 206(d).

[2] 42 U.S.C. § 2000e, *et seq*.

received a Letter of Determination finding reasonable cause to believe that the College had violated both statutes. After she filed her complaint, the College submitted a motion asking the court to stay proceedings, along with a signed Mediation and Arbitration Agreement, stating that Ms. DeHart had agreed to mandatory arbitration in her employment contract.

The Arbitration Agreement provides, in relevant part:

> Step Three: Any and all disputes, conflicts, problems, controversies, or claims of any kind arising from or connected to employment with the [College] with the exception of any matter reserved to the Court or denied the arbitration process by any state [or] federal laws, shall be submitted to binding arbitration. The parties shall jointly choose a single arbitrator from the panel of arbitrators with the American Arbitration Association ("AAA"). The arbitration shall be conducted under the rules of the AAA. . . . The decision of the majority of the arbitrators shall be final and binding upon both parties. Should either party refuse or neglect to choose an arbitrator or otherwise sincerely and in good faith participate in the arbitration process then the arbitrator(s) is empowered to proceed with one side alone. *Each party shall share equally in the cost of the mediation and/or arbitration process*.[3]

The above wording is contained in two separate documents simultaneously provided to Ms. DeHart as part of a packet during new hire training at the College.[4] The first document was the employee manual that contained the College's policies and procedures.[5] The second document was a separate sheet containing the Agreement which Ms. DeHart signed.[6] Because Ms. DeHart signed this Agreement upon employ, the College now argues that she must submit

---

[3] Defendant's Memo. in Supp. of Mot. to Compel Arbit., Docket No. 3, at 3 (Oct. 31, 2005) (emphasis added).

[4] Plaintiff's Decl. in Supp. of Opp'n to Mot. to Compel Arbit., Docket No. 5, Ex. A at 2 (Nov. 10, 2005).

[5] Plaintiff's Opp'n, Ex. A at 2 and Ex. B at 5.

[6] *Id.*; Defendant's Memo. in Supp. of Mot. to Compel Arbit., Ex. A.

her claim to binding arbitration before filing her complaint with the court. Ms. DeHart counters that (1) no Agreement to arbitrate exists or the Agreement is illusory; (2) the impermissible cost-splitting provision renders the Arbitration Agreement ineffective; and (3) the Arbitration Agreement is unenforceable against the EEOC. The court will address each of Ms. DeHart's contentions.

Both sides disagree as to whether the Arbitration Agreement is an actual contract. The College alleges that Ms. DeHart actually signed the Agreement as part of her employment agreement, and that the Agreement should control. Ms. DeHart claims that the Agreement was presented as part of the Employee Manual and is not a contract. Ms. DeHart also contends that the College expressly reserved the unilateral right to modify the Agreement, thus making it illusory. The Employee manual states, "The Company reserves the right to revise, modify, delete, or add to *any and all* policies, procedures, work rules, or benefits stated in this manual, *or any other document*, except for the policy of at-will employment."[7] The Manual also contains the above-quoted language of the Arbitration Agreement under the heading "Introductory Policies."[8] While the court declines to address whether the Arbitration Agreement was an actual contract, it is clear by the language of the Agreement and manual that the College considered the Agreement one of its policies. And the College, in its employee manual distributed contemporaneously with the Agreement, expressly reserved for itself the unfettered right to modify "any and all" of its policies, whether contained in the manual "or any other document."

---

[7] Plaintiff's Opp'n, Ex. B at 3 (emphasis added).

[8] Plaintiff's Opp'n, Ex. B at 1, 5 (emphasis added).

Under these facts, and in accordance with the Tenth Circuit's holding in *Dumais v. American Golf Corp.*,[9] the court finds the Agreement illusory.  In *Dumais*, the arbitration agreement was contained in an employee manual that also contained two contradictory provisions, one reserving to the employer the right to change any provision in the manual except for the at-will employment provision, and one reserving to the employer the right to change any provision in the manual except for the at-will and arbitration provisions.[10]  The employee had signed an agreement binding her to the provisions of the manual.[11]  Construing the document against the drafting employer, the Tenth Circuit held that the provision allowing the employer to modify the arbitration provision applied, and that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."[12]

The College argues that *Dumais* should not apply here.  The College contends that it lacked the power to alter the Arbitration Agreement because the Agreement was contained in a separate contractual document, and because the employee handbook states that "[n]othing in this manual or in any other personnel document, including benefit plan descriptions, creates, or is intended to create a contract, promise, or representation of continued employment for any employee."[13]  Neither argument is compelling.  The language cited by the College is clearly

---

[9]299 F.3d 1216 (10th Cir. 2002).

[10]*Id.* at 1217.

[11]*Id.*

[12]*Id.* at 1219 (citing cases from the Sixth, Fourth, and Seventh Circuits).

[13]*See* Plaintiff's Opp'n, Ex. B at 3.

directed at the at-will employment status of employees contained in the previous section of the manual and does not deal with the arbitration provision. More importantly, however, the College expressly reserved for itself the power to modify the terms of any policy on *any document* through language even broader than the provisions addressed in *Dumais*. This case is indistinguishable from *Dumais*, as the Agreement allows only the College to alter its existence or scope, thereby rendering the Agreement illusory, and the court cannot compel arbitration.

Ms. DeHart's second argument, that the cost-splitting provision in the Agreement should not be compelled because her access to a forum for vindicating her claims would be denied, may also have merit. The Agreement states that "Each party shall equally share in the cost of the mediation and/or arbitration process." Ms. DeHart has submitted an affidavit stating that the costs of this arbitration would be prohibitively expensive, and has provided some indication of cost estimates should the employment claim go to arbitration. The Tenth Circuit has refused to enforce such fee-splitting provisions because they effectively deny a Title VII plaintiff a forum to vindicate her claims.[14]

On the other side of this argument, however, the U.S. Supreme Court has held, after *Shankle*, that the strong preference for arbitration of disputes expressed by Congress in the Federal Arbitration Act must be enforced where possible.[15] *Green Tree* specifically held that while the existence of large arbitration costs could preclude a litigant from effectively vindicating her federal statutory rights in arbitral form, "unsupported statements" regarding the costs

---

[14] *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999).

[15] *See Green Tree Fin. Corp. - Alabama v. Randolph*, 531 U.S. 79 (2000).

involved were not sufficient to carry a plaintiff's burden against compelled arbitration.[16] Under this holding, the party who sought to avoid arbitration has the burden to show the likelihood of prohibitive costs, and upon a threshold showing, the burden of production of evidence shifts to the party seeking arbitration to counter that showing.[17] Indeed, the Tenth Circuit has cited *Green Tree* with approval on other points of law.[18]

It is possible to reconcile *Green Tree* and *Shankle*.[19] In *Shankle*, the court noted that the plaintiff in that case could not afford to pay the arbitral fees that would be incurred, and that it was unlikely that other similarly situated employees could either.[20] Thus, an acceptable reading of *Shankle* after *Green Tree* is that the Tenth Circuit employs a case-by-case evaluation of the employee's ability to pay arbitration costs. The evidence before the Tenth Circuit was little more than the evidence before the court in this case: an estimate of the costs that would be incurred in an arbitration according to the fee estimates of area arbitrators.[21] Based on these comparisons, the College's motion would likely have to be denied, at least for a time sufficient to allow the parties to conduct discovery on the issue of Ms. DeHart's or other similarly-situated employees'

---

[16]*Id.* at 90-91 & n.6.

[17]*Id.* at 92.

[18]*See, e.g.*, *Commanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129 (10th Cir. 2004); *Dumais*, 299 F.3d 1216.

[19]*See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1128-29 (D. Kan. 2003) (reconciling *Green Tree* and *Shankle*).

[20]163 F.3d at 1234-35.

[21]*See Shankle v. B-G Maint. Mgmt. of Colo.*, No. 96 N 2932, 1997 U.S. Dist. LEXIS 11024, at *3-*4, 1997 WL 416405, at *1 (D. Colo. Mar. 24, 1997).

ability to pay half of the cost of the arbitration as part of a determination of the validity of the Agreement.  In light of the court's earlier conclusion that the arbitration provision is unenforceable, however, the court need not finally resolve this issue.

Ms. DeHart finally contends that the Agreement is unenforceable against the EEOC.  Although the EEOC has filed a claim against the College in this district,[22] Ms. DeHart has not moved to consolidate this case with the EEOC case.  The EEOC filed a motion to consolidate the two cases yesterday, however (#4 in Case No. 1:05-CV-122 DAK).  A review of the EEOC complaint by this court shows that it arises from substantially the same transaction or event as this cases, involves many of the same parties, calls for determination of substantially the same questions of law, and would likely entail the duplication of labor or unnecessary court costs or delay if heard by different judges.  Normally, the court would wait ten days for a response from the parties, but even before the EEOC's motion, the court planned on consolidating these two cases on its own motion.  Having reviewed the instant complaint and the complaint filed by Equal Employment Opportunity Commission in Case No. 1:05-CV-122 DAK, and given the reasons articulated above, the court orders this case consolidated with Case No. 1:05-CV-122 DAK under Fed. R. Civ. P. Rule 42(a) and DUCivR 42-1.

The court finds that the Agreement to compel arbitration is unenforceable against Ms. DeHart because it only allows for the College to alter the Agreement's existence or scope.  At this time, the court declines to decide whether the fee-splitting provision also renders the

---

[22]EEOC v. Stevens-Henager College, Case No. 1:05-CV-00122 DAK (D. Ut. Sept. 28, 2005)

Agreement unenforceable.  Given the current findings, the court DENIES the College's motion to compel arbitration (#2).  The court also orders this case consolidated with Case No. 1:05-CV-122 DAK in accordance with Fed. R. Civ. P. Rule 42(a) and DUCivR 42-1.

DATED this 2nd day of December, 2005.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge